**SO ORDERED.**

**SIGNED this 22 day of July, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | |
| LAURA MELISSA WALL-MCMAHEL, | CASE NO. 09-05754-8-JRL |
| | CHAPTER 7 |
| Debtor. | |
| | |
| IN RE: | |
| ERIC WILSON and LAURIE WILSON, | |
| Plaintiffs, | Adversary Proceeding Number |
| | 09-00231-8-JRL |
| v. | |
| LAURA MELISSA WALL-MCMAHEL, | |
| Defendant. | |

_____

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

This matter came before the court on cross-motions for summary judgment. On June 28, 2010, the court conducted a hearing on the matter in Raleigh, North Carolina.

### JURISDICTION AND PROCEDURE

This court has jurisdiction over the parties and the subject matter of this proceeding

pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

**UNDISPUTED FACTS**

1. The defendant is the owner of a window dressing business known as Best Blinds. Best Blinds began operations in 1997. Before 2007, the defendant entered into business training agreements with third parties. Such agreements allowed third parties to conduct business as distributors of Best Blinds' products in exclusive distribution areas.

2. In January 2005, Thomas Christopher Lawing ("Lawing") and Brandy Hindes ("Hindes") entered into a business training agreement with the defendant encompassing Johnston, Franklin, and Granville counties.

3. Early in 2007, the defendant formed Best Blinds Franchising, Inc. for the purpose of selling Best Blinds franchises and converting existing distributors to franchisees. Though Lawing and Hindes were given the opportunity to participate in the franchise program they were not required to do so.

4. In March 2007, Lawing, as a distributor, visited the plaintiff's home with the intent of selling window blinds. While there, the plaintiffs inquired about franchise opportunities with the Best Blinds company. Lawing referred the plaintiffs to the defendant.

5. The plaintiffs contacted the defendant and expressed their interest in becoming franchisees for certain counties including Franklin and Granville. The defendant informed the plaintiffs that Lawing and Hindes already had exclusive rights in those counties, but thought they

2

would be willing to sell their interest.

6. The defendant was aware that in accordance with the January 2005 business training agreement, a written release from Lawing and Hindes was required before the plaintiffs could conduct business in the subject counties.

7. Lawing and Hindes negotiated with the defendant that they would release Franklin and Granville counties for a sales price of $10,000.00. The parties came to a verbal agreement that instead of paying $10,000.00 outright, the amount would be credited against monies owing to the defendant.

8. In July 2007, the defendant mailed a release to Lawing and Hindes along with a franchise agreement. The release was intended to memorialize the verbal agreement. Neither Lawing or Hines signed the release.

9. On August 12, 2007, the defendant presented the plaintiffs with a franchise agreement granting them the exclusive right to operate a Best Blinds franchise in Person, Granville, Vance, Franklin, and Warren counties. The plaintiffs paid a sum of $50,437.11 for the franchise agreement. At the time the plaintiffs executed the franchise agreement, the defendant was aware that the requisite release had not been obtained.

10. On August 30, 2007, the male plaintiff received a call from Lawing who communicated that neither he nor Hindes had signed the release. After receiving the call, the male plaintiff contacted the defendant who assured him the problem was being resolved. The defendant advised the plaintiffs to continue business as usual. Over the course of the following months, the defendant continually reassured the plaintiffs in this manner.

11. On December 10, 2007, having failed to obtain the release, the defendant offered the

plaintiffs an option to rescind the franchise agreement. The plaintiffs accepted the offer on December 26, 2007. A termination agreement was drafted by an attorney for the defendant, which included a non-competition clause and obligation for payment of termination fees. On January 18, 2008, the plaintiffs informed the defendant that the proposed termination agreement did not comport with the terms the parties discussed.

  12. On February 28, 2008, the plaintiffs initiated an action in the Superior Court for Vance County against Best Blinds Franchising, Inc. and the defendant.

  13. On March 20, 2009, a judgment was entered against the defendant. The court found that the defendant committed an act of unfair and deceptive trade practice. Damages were awarded in the amount of $48,787.11, and were ordered trebled in accordance with N.C.G.S. § 75-16.

  14. On July 24, 2009, the defendant filed for relief under chapter 7 of the Bankruptcy Code.

## STANDARD OF REVIEW

  Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.

Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

This is a dischargeability action in which the plaintiffs contend that the $210,000.00 judgment rendered against the defendant in state court is nondischargeable pursuant to § 523(a)(2)(A). Both parties argue entitlement to summary judgment under the theory of collateral estoppel. The plaintiffs argue that collateral estoppel applies because the elements necessary for a finding of nondischargeability are sufficiently implied in Judge Hight's findings of fact. The defendant asserts that collateral estoppel precludes a claim for fraud leaving the claim dischargeable. Alternatively, the defendant states that no genuine issue of material fact exists because of the lack of subjective intent. This court agrees that the plaintiffs were wronged by the defendant. However, summary judgment as a matter of collateral estoppel for either party is not entirely fitting in this instance.

Collateral estoppel is designed to promote judicial efficiency and prevent repetitious lawsuits. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 427; 349 S.E.2d 552, 556 (1986); 19 N.C. Index 4th Judgments § 165 (2010). A judgment in a prior action will act as an estoppel to matters in a latter action if such matters were essential to the previous determination. McInnis, 318 N.C. 421 at 427 *(citing* Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876)). For a party asserting collateral estoppel to succeed, they must show that the earlier lawsuit resulted in a final judgment, that the issue now in question is identical to one previously litigated and was necessary to said judgment, and that the latter suit involves the same parties or ones in privity

5

thereto. McInnis, 318 N.C. 421 at 428 - 429; 19 N.C. Index 4th Judgments § 165 (2010). The present action is subsequent to the final state court action and does involve the same parties. However, the determinative findings articulated in the previous state court judgment which held the defendant liable for committing an unfair and deceptive trade practice do not perfectly align with the issue of dischargeability.

Pursuant to the Bankruptcy Code, an individual debtor is not discharged from any debt for money to the extent that said money is obtained under "false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. §523(a)(2)(A). This section of the Code is satisfied when the following five elements are proven: 1) the debtor made a representation; 2) the debtor knew the representation was false at the time it was made; 3) the debtor intended to deceive the creditor at the time the debtor received the money; 4) the creditor relied on the representation; and, 5) as a result of reliance the creditor sustained a loss. Randle v. Highfill (In re Highfill), 336 B.R. 701, 706 (Bankr. M.D.N.C. 2006). In reviewing the state court judgment, the findings of fact establish all of these prongs with the exception of one. The hiccup in the plaintiff's argument lies in the third prong. To exempt a debt from discharge under § 523(a)(2)(A), the creditor must prove the subjective intent of the debtor. Longo v. McLaren (In re McLaren), 3 F.3d 958, 960 (6th Cir. 1993). Intent is not considered when applying North Carolina's Unfair and Deceptive Trade Practices Act.

Under North Carolina law, a violation of the Unfair and Deceptive Trade Practice Act is established by showing that there was an unfair or deceptive act, in or affecting commerce, which proximately caused actual injury to the plaintiff. N.C.G.S. § 75-1.1; Peterson v. Bozzano (In re Bozzano), 183 B.R. 735 (Bankr. M.D.N.C. 1995). A trade practice is considered deceptive

if it has the tendency or capacity to mislead.  A deliberate act or bad faith need not be shown.  Boyd v. Drum, 129 N.C. App. 586, 593, 501 S.E. 2d 91, 97 (1998), aff'd, 350 N.C. 90, 511 S.E. 2d 304 (1999).  Number 91 of Judge Hight's findings mirrors this reading of the law.  Fraudulent intent was not a factor.  Moreover, while this court agrees that the defendant's actions were seriously misleading, it cannot say without further evidentiary hearing that such actions were intentionally deceptive.  "Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts; however, the converse is not always true."  Volumetrics Medical Imaging, Inc. v. ATL Ultrasound, Inc., 243 F. Supp. 2d 386, 418 fn. 15 (M.D.N.C. 2003)(*citing* Hardy v. Toler, 288 N.C. 303, 218 S.E. 2d 342 (1975)).

Based on the foregoing, the court finds that the plaintiff's motion for summary judgment is **GRANTED** in part and **DENIED** in part.  The defendant's motion for summary judgment is **DENIED**.  Collateral estoppel as a matter of summary judgment applies to all elements under § 523(a)(2)(A) except for the subjective intent of the defendant.  The defendant made representations she knew to be false upon presenting the plaintiffs with the franchise agreement for Franklin and Granville counties, and continued to make false representations about the plaintiff's ability to conduct business "as usual".  Reasonably relying on such representations the plaintiffs incurred financial loss.  However, in the state proceeding the element of subjective intent was not essential to the judgment.  Therefore, the issue of the defendant's intent is reserved for trial.

**END OF DOCUMENT**