**SO ORDERED.**

**SIGNED this 16 day of September, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | |
| LAURA MELISSA WALL-MCMAHEL, | |
|     DEBTOR. | CASE NO. 09-05754-8-JRL<br>Chapter 7 |
| | |
| ERIC WILSON, and<br>LAURIE WILSON, | |
|     PLAINTIFFS. | ADVERSARY PROCEEDING<br>NO: 09-00231-8-JRL |
| v. | |
| LAURA MELISSA WALL-MCMAHEL, | |
|     DEFENDANT. | |

_____

**ORDER**

This matter is before the court on the complaint filed by Eric and Laurie Wilson (collectively known as the "plaintiffs") to determine whether the state court judgment entered in their favor against Laura Wall-McMahel ("defendant") is dischargeable pursuant to § 523(a)(2)(A). A trial was conducted on August 19, 2010 and continued to and concluded on August 27, 2010.

## JURISDICTION

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine. Dischargeability of a particular debt is specifically defined as a core proceeding in 28 U.S.C. § 157(b)(2)(I). Bankruptcy courts have exclusive jurisdiction of most dischargeability determinations under § 523(a)(2). Collier on Bankruptcy ¶ 523.03 (Alan N. Resnick & Henry J. Sommer eds., 2009).

## PROCEDURAL HISTORY

The plaintiffs initiated this adversary proceeding on October 13, 2009, pursuant to §§ 523 (a)(2)(A) and 523(c) of the Bankruptcy Code ("Code"). Their complaint seeks to determine the dischargeability of a state court judgment for unfair and deceptive trade practices awarded in their favor by the Vance County Superior Court in Vance County, North Carolina on March 20, 2009. Defendant answered the complaint on December 14, 2009 and sought dismissal of the complaint pursuant to Fed. R. Civ. Pro. 12(b)(6). A preliminary pretrial conference was scheduled for February 1, 2010, but was later rescheduled and held on March 8, 2010. On March 5, 2010, plaintiffs filed a motion for summary judgment accompanied by a memorandum of law in support of the motion. Defendant responded and filed a cross-motion for summary judgment and memorandum of law in support on April 1, 2010. On April 20, 2010, plaintiffs responded to the defendant's motion for summary judgment. A hearing on the cross-motions for summary judgment

was held on June 28, 2010 and an order granting in part and denying in part the plaintiffs' motion for summary judgment and denying the defendant's motion for summary judgment was entered by this court on July 22, 2010. That order reserved for trial the issue of whether the defendant had the requisite subjective intent to deceive the plaintiffs during their business transactions. If the defendant did have the requisite subjective intent, then the state court judgment will be deemed non-dischargeable. However, if the evidence establishes that the defendant did not have the requisite subjective intent to deceive, then the state court judgment will be deemed dischargeable.

## FINDINGS OF FACT

1. Defendant is the owner of a window dressing business known as Best Blinds, which began operations in 1997. Between 1997 and 2007, defendant entered into several business training agreements with third parties, which allowed the third parties to conduct business as distributors of Best Blinds' products in exclusive distribution areas.

2. In January of 2005, Thomas Christopher Lawing ("Lawing") and Brandy Hindes ("Hindes") entered into a business training agreement with the defendant granting them exclusive rights to sell Best Blinds' products in Johnston, Franklin, and Granville counties. They later purchased the exclusive rights to sell in Apex, Cary and Morrisville too.

3. In 2007, the defendant formed Best Blinds Franchising, Inc. for the purpose of selling franchises and converting existing distributors to franchisees. Lawing and Hindes declined the opportunity to become franchisees, despite being given the opportunity to do so.

4. In March of 2007, Lawing visited the plaintiffs' home for the purpose of selling window dressings. While there, the plaintiffs inquired about franchise opportunities with Best Blinds. Lawing referred them to the defendant for information about such opportunities.

5. The plaintiffs expressed their immediate interest in becoming franchisees for "Raleigh and North of the Triangle also Southern Virginia (Clarksville, South Hill)" through an electronic questionnaire submission on March 21, 2007. The defendant emailed the plaintiffs and told them that Raleigh/Wake Forest and Franklin and Granville counties were not available as they had already been purchased by others (specifically Lawing and Hindes); however, the defendant also stated the owners of those territories "have expressed interest in possibly selling . . . ."

6. A "franchise kit" was mailed to the plaintiffs by the defendant on March 27, 2007. Also, on that date, defendant informed the plaintiffs that she had spoken to Lawing and Hindes about selling Franklin and Granville county territories and they were willing to sell them back to the defendant.[1]

7. On March 28, 2007, the defendant informed the male plaintiff that she had not mentioned his name when discussing the release of Franklin and Granville counties to Lawing and Hindes. Defendant asked plaintiffs to allow her to negotiate the release, but had no objection to the plaintiffs discussing the business with whomever they liked.

8. At some point in late March and early April of 2007, the defendant emailed Lawing and Hindes and informed them that someone was interested in purchasing the exclusive right to sell in Franklin and Granville counties. In that same email she inquired if they, Lawing and Hindes, were interested in "getting rid of" the territories. Hindes responded on April 2,

---

[1] Selling back the territories to the defendant would act as a release of their exclusive rights to sell in that area. Upon release, Franklin and Granville counties could by sold by the defendant to the plaintiffs without violating the business training agreement between the defendant and Lawing and Hindes.

4

2007, asking what needed to be done to proceed with the release of the property. The defendant responded that Lawing and Hindes should discuss how they wanted to handle the release.

9. In an email dated May 16, 2007, defendant informed Lawing and Hindes that her attorney was going to draft the paperwork for the transfer of the territory of Franklin and Granville counties.

10. Lawing and Hindes negotiated with the defendant that they would release Franklin and Granville counties for a sales price of $10,000.00. The parties came to a verbal agreement that instead of paying $10,000.00 outright, the amount would be credited against monies owing to the defendant.

11. On May 22, 2007, the defendant emailed Lawing and Hindes to inquire about the specific details of the transfer of the territory and said that once the transfer was complete she would credit Lawing and Hindes' account $10,000 to represent the price the parties agreed would be paid for the release. The release paperwork would be attached to the new franchise agreement that would replace the existing business training agreement.

12. Emails dated June 8, 2007 and June 28, 2007 evidence the defendant was working with her attorney, Marisa Faunce, to draft and revise the documents for the release and transfer of Franklin and Granville counties throughout June of 2007.

13. In an email dated June 20, 2007, the defendant notified Hindes that the plaintiffs were "moving forward" with the franchise agreement and a July 2007 payment would not be needed for Franklin and Granville counties unless she notified them. Also in that email, the

defendant stated ". . . your franchise agreement will be sent out with the release for Franklin and Granville counties."

14. In an email dated, July 6, 2007, defendant told her attorney that they had reached an agreement with their first franchisees, the plaintiffs. At this same time, emails were exchanged between the plaintiffs and defendant evidencing attempts to come to a mutual agreement on the language of the franchise agreement.

15. On July 12, 2007, defendant mailed plaintiffs the final contract with an addendum and suggested scheduling a meeting on July 23, 2007 to sign the papers as her attorney advised they could not enter the contract prior to that date. Also in that letter, defendant advised the plaintiffs that she had scheduled their training on the Best Blinds business and products for the week of August 6, 2007.

16. On August 2, 2007, the defendant emailed Hindes and among other things requested that Hindes and Lawing sign the franchise agreement she sent in July of 2007 as the release of Franklin and Granville counties was attached to that document and memorialized their oral agreement. Neither signed the franchise agreement or the release.

17. Emails between the plaintiffs and defendant and the defendant's attorney continued through August 9, 2007 when the defendant emailed the plaintiffs and attached the addendums and agreement modifications requested by the plaintiffs. Defendant informed plaintiffs that she had been advised by counsel that the five day waiting period previously required was not necessary as the only changes to the documents had been requested by the plaintiffs.

18. The parties met on August 12, 2007 and signed the document titled "Best Blinds Franchise Agreement" ("Franchise Agreement"). In the agreement the plaintiffs' territories included

the following North Carolina counties: Person, Granville, Vance, Franklin and Warren. Also attached to the Franchise Agreement was a county map of North Carolina with the aforementioned counties highlighted.[2] The plaintiffs and the defendant signed the Franchise Agreement. The defendant's husband, Darren McMahel, signed the document as a witness. The plaintiffs paid the defendant $50,437.11 as a franchising fee and costs for initial start-up and training.

19. At the time the parties executed the Franchise Agreement, the defendant had not received the signed release of Franklin and Granville counties from Lawing and Hindes despite the fact that she knew that such a release was required before she could provide the plaintiffs with exclusive rights to sell in those counties. Defendant did not inform the plaintiffs that she had not received the signed release from Lawing and Hindes prior to execution of the Franchise Agreement.

20. On August 30, 2007, the male plaintiff received a telephone call from Lawing who communicated that he and Hindes were the exclusive Best Blinds distributors for Franklin and Granville counties. Lawing further informed the male plaintiff that neither he nor Hindes had signed a release of the counties and they intended to continue to make sales in the territory.

21. After receiving the telephone call, the male plaintiff contacted the female plaintiff and informed her of the conversation he had with Lawing. The plaintiffs then called the

---

[2] Prior to this time, the defendant had used a state map without county boundary lines and roughly outlined the territories to be included in various business training agreements.

    defendant who assured them the problem was being resolved and they should continue business as usual.

22. On September 6, 2007, the defendant emailed the female plaintiff and informed her "all is well with [Lawing] about the territory ... he's like a different person."

23. The defendant began training the plaintiffs on the business and products of Best Blinds on September 10, 2007 and continued to do so at her training facility for approximately one week.

24. On September 13, 2007, defendant's attorney, Marisa Faunce, sent a letter to Richard Carlton, attorney for Lawing and Hindes, attempting to resolve the conflict between Lawing, Hindes and the defendant about whether credits toward the amount owed to the defendant or cash would be exchanged for the release of Franklin and Granville counties.

25. Both Lawing and Hindes and the plaintiffs conducted business under the Best Blinds name between August of 2007 and March of 2008.

26. On October 11, 2007, defendant emailed the male plaintiff and admitted the deal with Lawings and Hindes had not been completed, but she and her attorney were hoping to have it done in the next couple of days.

27. On October 16, 2007, Lawing forwarded the defendant a copy of an email he sent to his attorney. The email outlined the specific demands of Lawing and Hindes before they would be willing to release the Franklin and Granville properties and how they wished to be compensated.

28. On October 16, 2007, Faunce again contacted Carlton regarding the deal between their respective clients for the release of Franklin and Granville counties. In the correspondence,

defendant agreed to pay $10,000 in two payments of $5,000 in addition to a 10% fee for a sale conducted in Franklin county by the plaintiffs.

29. Throughout October of 2007 and November of 2007, the defendant continued to negotiate with Lawing and Hindes and would communicate her efforts to the plaintiffs.

30. On December 4, 2007, defendant emailed plaintiffs and informed them that an agreement had been reached with Lawing and Hindes. Lawing and Hindes would leave the Best Blinds system since they were in breach of their contract with the defendant. The defendant alluded to an alternate plan if they did not leave the Best Blinds system, which was to initiate a civil suit against Lawing and Hindes for breach of contract.

31. Faunce contacted Carlton on December 6, 2007 to inquire about the decision his clients had made about selling all or some of their territories back to the defendant. Carlton responded that his clients wanted to sell Franklin and Granville counties back to the defendant and the agreement she sent appeared to be "fine."

32. On December 7, 2007, the defendant forwarded to Lawing and Hindes a copy of the addendums and release documents with her signature affixed.

33. On December 10, 2007, the plaintiffs, the defendant, and the defendant's husband met at the Carolina Ale House in Briar Creek and the defendant reiterated her desire to resolve the issues with Lawing and Hindes and have the release of Franklin and Granville counties completed. To avoid being in breach of her business training agreement with Lawing and Hindes regarding the exclusive right to sell in a given territory, the defendant gave the plaintiffs the option of either rescinding the Franchise Agreement as if it had never been entered into or acquiring additional territories to replace Franklin and Granville counties.

34. By an email dated October 11, 2007, the defendant followed up with the plaintiffs saying her attorney advised that depending on which option they elected an addendum could be added to identify the new territories or a termination agreement could be drafted.

35. On December 26, 2007, plaintiffs relayed to defendant that they would prefer to terminate the agreement and she should forward the requisite paperwork.

36. Counsel for the defendant, Anthony Biller, sent a letter to Carlton, counsel for Lawing and Hindes, on December 27, 2007, terminating all business dealings between the parties based on Lawing and Hindes' material breach of their contractual obligations.

37. On December 31, 2007, defendant responded to the plaintiffs' email evidencing their intent to rescind the Franchise Agreement and stated her attorney would draft the termination agreement as the parties had discussed at their meeting on December 10, 2007.

38. A termination agreement was sent to the plaintiffs on January 10, 2008 and included non-competition obligations binding on the plaintiffs, as well as requiring the plaintiffs to pay termination fees.

39. On January 18, 2008, the plaintiffs advised the defendant that the proposed termination agreement did not represent their agreement reached on December 10, 2007.

40. The plaintiffs initiated a civil lawsuit in Vance County Superior Court against the defendant and Best Blinds Inc. on February 28, 2008.

41. At no time did the defendant pay Lawing and Hindes the $10,000 requested for the release of Franklin and Granville counties.

42. On March 20, 2009, the Vance County Superior Court entered a judgment against the defendant. Specifically, that court found the defendant's conduct constituted an unfair and

deceptive trade practices violation under North Carolina General Statute Chapter 75 and awarded damages in the amount of $48,787.11.[3] The damages award was trebled pursuant to N.C. Gen. Stat. § 75-16.

43. On April 20, 2009, the Vance County Superior Court assessed the plaintiffs' attorneys fees in the amount of $53,687.50 against the defendant.

44. On July 24, 2009, the defendant filed for relief under chapter 7 of the Code.

## ANALYSIS

The plaintiffs assert that the judgment entered in Vance County Superior Court in their favor establishes that the defendant: (1) willfully and fraudulently made false representations and omissions regarding a material fact; (2) the defendant's misrepresentation deceived them; (3) they reasonably relied on the defendant's misrepresentation; and (4) they were injured. The defendant admits all allegations made by the plaintiffs, but challenges the conclusion that the judgment from Vance County establishes actual fraud and therefore makes the judgment debt non-dischargeable pursuant to § 523(a)(2)(A).

The Code's purpose of providing debtors with a fresh start requires that exceptions to discharge be construed narrowly; however, a creditor may move for certain debts to be deemed non-dischargeable as there is "no constitutional or 'fundamental' right to a discharge in bankruptcy." Grogan v. Garner, 498 U.S. 279, 286 (1991) (citing United States v. Kras, 409 U.S. 434, 445-446 (1973)). Section 523(c)(1) provides that all debts described in § 523(a)(2)(A) will be automatically discharged unless the creditor to whom the debt is owed obtains a determination by the bankruptcy

---

[3]The parties agreed to the defendant receiving a credit of $1650.00 from the total $50,437.11 the plaintiffs paid at the December 10, 2007 meeting.

court that the particular debt is non-dischargeable. 11 U.S.C. § 523(c)(1). Section 523(a)(2)(A) provides, in pertinent part, that "a discharge under section 727 . . . does not discharge an individual debtor from any debt – for money . . . to the extent obtained by – false pretenses, a false representation, or actual fraud . . . ." . 11 U.S.C. § 523(a)(2)(A). To prevail in a dischargeability action under § 523(a)(2)(A), a plaintiff must show the following:

> (1) the debtor made false representations (2) that at the time [s]he knew the representations were false; (3) that [s]he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

Randle v. Highfill (In re Highfill), 336 B.R. 701, 706 (M.D.N.C. 2006); see In re Biondo, 180 F.3d. 126, 137 (4th Cir. 1999); see also Visotsky v. Woolley (In re Woolley), 145 B.R. 830, 834 (E.D. Va. 1991) (citing Sweet v. Ritter Finance Co., 263 F. Supp. 540, 543 (W.D. Va. 1967). When determining if a particular debt meets the dischargeability exception requirements, courts should apply the preponderance of the evidence standard. Grogan, 498 U.S. at 291. To exempt a debt from discharge under § 523(a)(2)(A), the creditor must prove the subjective intent of the debtor. Longo v. McLaren (In re McLaren), 3 F.3d 958, 960 (6th Cir. 1993). It is well settled in North Carolina law that a violation of the Unfair and Deceptive Trade Practice Act is established by showing that there was an unfair or deceptive act, in or affecting commerce, which proximately caused actual injury to the plaintiff. N.C. Gen. Stat. § 75-1.1; Peterson v. Bozzano (In re Bozzano), 183 B.R. 735 (M.D.N.C. 1995). Intent is not considered when determining if North Carolina's Unfair and Deceptive Trade Practices Act has been violated.

The only issue before this court is whether when the debtor presented the Franchise Agreement to the plaintiffs on August 12, 2007, she had the subjective intent to deceive the

plaintiffs: essentially, whether the third prong of the required showing by the plaintiffs has been met.

Under a § 523(a)(2)(A) analysis:

> [A] debtor will be found to have acted with the requisite intent to defraud under § 523(a)(2)(A) when, at the time the transaction occurred, it is established that the debtor, for [her] personal gain, knowingly mislead the [creditor] as to a material fact concerning the [debt].

White v. Sigmon, 128 Fed. Appx. 994, 998 (4th Cir. 2005) (citing In re Grim, 293 B.R. 156, 163 (Bankr. N.D. Ohio 2003)). A showing of reckless indifference or disregard of the truth will satisfy the requirement that the defendant acted with the intent to deceive. Woolley, 145 B.R. at 835. Intent may also be inferred by an examination of the totality of the circumstances, but such intent shall never be presumed. Id. at 836 (citing Schwalbe v. Gans (In re Gans), 75 B.R. 474, 486 (Bankr. S.D.N.Y. 1987)). The defendant's conduct after the statement was made may be considered in determining whether there was fraudulent intent. Id. (citing In re Haining, 119 B.R. 460, 464 (Bankr. D. Del. 1990)).

Based on the facts found herein, this court finds that the defendant did have a good faith belief that she had a contract with Lawing and Hindes to release Franklin and Granville counties prior to August 12, 2007, and for that reason there was no intent to deceive the plaintiffs. Prior to the signing of the Franchise Agreement, numerous emails were exchanged between the defendant and Lawing and Hindes which indicate that as early as May 25, 2007, there was an agreement to release Franklin and Granville counties. This agreement is apparent based on Hindes' indication, through an email dated May 25, 2007, that she and Lawing would sell the two counties, but not Johnston county, and also how they would like to be compensated for the release. Hindes indicated that they did not want their payment period shortened, but instead wanted each payment amount

13

reduced. Without an agreement to release there would have been no reason to reduce the debt owed to the defendant.

Furthermore, throughout June, July and the beginning of August of 2007, there are a number of emails between the defendant and her attorney attempting to draft release documents that met with Lawing and Hindes' specifications. The defendant could not ultimately come to terms that were agreeable to Lawing and Hindes; however, that did not become clear until after the August 12 signing of the Franchise Agreement by the plaintiffs. The evidence on the record also indicates that Lawing and Hindes delayed negotiations by making themselves unavailable for prolonged periods of time and by being indecisive on how they would accept compensation for the release of Franklin and Granville counties. That indecisiveness does not indicate the defendant's reckless disregard for the truth, but rather her difficulties in completing documentation of the release. This court does not excuse the defendant's behavior, but finds the behavior does not amount to a reckless disregard for the truth.

Taking into account the totality of the circumstances, it is evident that before and after the signing of the Franchise Agreement, the defendant actively engaged Lawing and Hindes to complete the release of Franklin and Granville counties. The defendant repeatedly emailed and called Lawing and Hindes, she kept in constant contact with her attorney to make revisions as requested by Lawing and Hindes, and her attorney repeatedly sent correspondence to Carlton in an attempt to memorialize the agreement. Nevertheless, those efforts were not fruitful because of the inability of the parties to decide whether a credit of $10,000 would be given to release the two counties or if cash would be exchanged. Despite the repeated assurances from Lawing and Hindes that they wanted to release Franklin and Granville counties, without the parties being able to resolve

that material element of the deal nothing could be finalized. While the plaintiffs were not privy to the communications between the defendant and Lawing and Hindes, it is evident that she was consistently working to resolve any differences in an attempt to provide the plaintiffs with exclusive sale rights in Franklin and Granville counties.

The court does not condone the defendant's behavior and is left with the firm impression that the state court was correct in concluding that her August 12, 2007 execution of the Franchise Agreement without a signed release in hand was an unfair and deceptive trade practice. After all, protection of a territory in which to do business was the heart of the agreement plaintiffs sought and were never provided. However, a close reading of the documentary evidence in this case leaves the court with the firm impression that the defendant had a reasonable belief on August 12, 2007 that she had a firm agreement for the release of the territories the plaintiffs desired.

Based on the foregoing, this court finds the defendant did not have an intent to deceive. Without an intent to deceive there cannot be a finding of actual fraud and the state court judgment entered against the defendant is **DISCHARGEABLE** pursuant to § 523(a)(2)(A).

**END OF DOCUMENT**